UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DORWIN BONHAM-CONN,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

Case No. 08-13248

HON. MARIANNE O. BATTANI

### OPINION AND ORDER REJECTING THE MAGISTRATE JUDGE'S R&R, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**I.**     **INTRODUCTION**

Before the Court are Defendant's Objections to the Magistrate Judge's Report and Recommendation. (Doc. 17). The Magistrate Judge's Report and Recommendation ("R&R") considered Plaintiff's Motion for Summary Judgment, (doc. 10), and Defendant's Motion for Summary Judgment, (doc. 14), and recommended that the Court remand the case for further proceedings because the administrative law judge ("ALJ") applied the incorrect legal standard in denying Plaintiff Dorwin Bonham-Conn's application for child's disability insurance benefits. Because the Court finds that the ALJ applied the correct legal standard, the Court rejects the R&R. Furthermore, the Court denies Defendant's Motion for Summary Judgment, grants in part and denies in part Plaintiff's Motion for Summary Judgment, and remands the case to the Commissioner for further proceedings.

## II.     STATEMENT OF FACTS

Bonham-Conn filed an application for child's disability insurance benefits in January 2004.  (See AR at 18, 187).  He alleged that he had been unable to work since he was born on January 12, 1985, because he had diminished strength in his hips and legs, in addition to mental limitations.  In their motions for summary judgment, the parties only address Bonham-Conn's mental limitations.  (See docs. 10, 14).  Therefore, only the evidence involving Bonham-Conn's mental limitations will be discussed.

In July 2004, Dr. Pamela Herringshaw, a psychologist, performed a psychological evaluation of Bonham-Conn.  (AR at 142-146).  Results from the Wechsler Adult Intelligence Scale – III showed an overall level of intellectual functioning within the Low Average to Borderline Range.  The Wide Range Achievement Test – 3, showed arithmetic and reading standard scores that were lower than expected, and Dr. Herringshaw opined that this suggested the presence of a learning disability.  Dr. Herringshaw concluded that Bonham-Conn would need assistance managing any benefit funds and that he should receive special education services.

Also in July 2004, Dr. Thomas Tsai, M.D., conducted a psychiatric review of Bonham-Conn's records.  (Id. at 149-62).  Dr. Tsai found that Bonham-Conn had a medically determinable impairment that did not precisely match the criteria for mental retardation.  He stated that this impairment mildly limited Bonham-Conn's activities of daily living and moderately limited his abilities to maintain social functioning and to maintain concentration, persistence, or pace.  Dr. Tsai completed a residual functional capacity ("RFC") assessment and concluded that Bonham-Conn was "moderately" limited in his abilities to (1) understand and remember detailed instructions, (2) carry out

detailed instructions, (3) maintain attention and concentration for extended periods, (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (5) accept instructions and respond appropriately to criticism from supervisors, and (6) respond appropriately to changes in the work setting. Dr. Tsai found, however, that Bonham-Conn was not significantly limited in the 14 other listed mental activities. As such, Dr. Tsai concluded that Bonham-Conn could do unskilled work. Likewise, Dr. John Wagner reviewed Bonham-Conn's records on June 17, 2005, and indicated that he was capable of unskilled work. (Id. at 180-81).

Bonham-Conn's application was denied both initially and, following an August 2005 hearing, by an ALJ. (Id. at 40, 184, 258). Bonham-Conn appealed the ALJ's decision and on September 30, 2006, the Appeals Council remanded the case back to the ALJ because the ALJ had resolved a "complex vocational issue" without receiving evidence from a vocational expert. (Id. at 210-11).

A new administrative hearing was held in March 2007. (Id. at 272-95). At the hearing, Bonham-Conn's mother testified that her son had difficulty in school. He had trouble staying on task, following directions, and paying attention. Starting in grade school, and continuing through high school, Bonham-Conn was in the special education program because of his difficulties. He also participated in a high school vocational program. Bonham-Conn's mother gave him chores to do around the house, but he had trouble completing them. She also tried to have Bonham-Conn help her cut the grass, but he would leave large strips of the yard uncut. Bonham-Conn indicated that he liked to skateboard and to use the computer to listen to music videos, talk to his friends, and look up concert dates.

> The ALJ proceeded to ask a vocational expert ("VE") the following question:
>
> Taking claimant's age, education, and work experience into account, assume that such a person has an exertional limitation of lifting 20 pounds occasionally, 10 pounds frequently. We impose further limitations of occasional climbing. And we look at jobs that would provide for routine production and stress, simple job assignments, occasional contact with supervision. And if we put this individual at the unskilled level, is there work either in a regional or national economy such a person could perform.

The VE responded that there were approximately 30,000 such jobs in southeast Michigan, including janitorial or cleaning occupations, kennel workers, and plant nursery workers. The ALJ then asked whether there would be any existing jobs for an individual with the non-exertional limitations claimed in the testimony of Bonham-Conn and his mother. The VE stated that there would not be jobs for such an individual because the testimony indicated that Bonham-Conn required an inordinate amount of supervision for him to be able to complete tasks on time. The VE also indicated that employers of unskilled workers generally expect their workers to be productive for 90% of the workday. Such employers do not tolerate employees who are significantly less than 90% productive because there are many other people who can step into the position without additional training. At the conclusion of the hearing, the ALJ indicated that he would like to have a psychological examination of Bonham-Conn.

Dr. Herringshaw performed a psychological evaluation of Bonham-Conn on April 24, 2007. (Id. at 216-25). She noted that his overall demeanor at the evaluation was discouraged, frustrated, and depressed. At the evaluation, Bonham-Conn reported that he had trouble paying attention and that although he could do things, he could not do three or four things at once. Dr. Herringshaw also learned that Bonham-Conn

graduated from high school in 2004. While in school, he worked at a nursing home, grocery store, and a farm as a part of a vocational program. He was not paid for the work, and he reported that he had a lot of complaints and had to do things three or four times in order to meet his employers' standards. Dr. Herringshaw noted that Bonham-Conn's school records indicated that he had a "bad attitude" while he was in the high school's vocational program.

Dr. Herringshaw also observed that Bonham-Conn seemed to be depressed about his job performance. Bonham-Conn told Dr. Herringshaw that he "was not bad at his self care skills but he could be better at it." In addition, he did not drive or have a driver's license, and he was financially dependant upon his mother. Dr. Herringshaw opined that he was overly dependent on his mother.

Dr. Herringshaw felt that Bonham-Conn appeared to be in good contact with reality. When asked about his self esteem, he indicated that he felt somewhere between happy and sad. His mother said he would get depressed, and Dr. Herringshaw indicated that his depression had increased since he graduated from high school. She also observed that Bonham-Conn's speech was clear and understandable, and that his thoughts were logical and well organized "at his intellectual level." There was no evidence of hallucinations, delusions, persecutions, obsessions, feelings of worthlessness, or suicidal ideas.

When Dr. Herringshaw asked Bonham-Conn to name five large cities he listed Detroit, New York, and Chicago, but was unable to remember more cities. He appeared not to understand the meaning of the phrase "The grass is greener on the other side of

the fence," and he understood the phrase, "Don't cry over spilled milk," to mean not to cry over "big things."

Dr. Herringshaw diagnosed Bonham-Conn with Mathematics Disorder (by history) on Axis I, Borderline Intellectual Functioning on Axis II, Hypotonia, developmental delays (by history) and weakness in hips, arms, and legs on Axis III, and occupational problems, educational problems, and problems with secondary support group on Axis IV.  She believed that his prognosis was poor because he was not involved in any kind of vocational program or training and appeared to be experiencing a downward spiral of depression.  She suggested that he be involved in such training along with counseling to address his dependency issues.  She also believed that his adaptive skill areas needed to be addressed because he was underachieving in most areas.  She believed, however, that he would be able to manage his benefit funds with some supervision.

Dr. Herringshaw also completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" form.  (Id. at 223-25).  In it, she indicated that Bonham-Conn had an unimpaired ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions.  If the tasks involved complex instructions or decision, however, she believed his ability to perform the tasks was mildly impaired.  She stated that Bonham-Conn had limited intellectual abilities and needed more time than the average person to learn and process complex information and to carry out complex instructions.  She found, however, that Bonham-Conn's ability to interact appropriately with others was not affected by his impairment.

Bonham-Conn's counsel subsequently submitted a set of interrogatories to Dr. Herringshaw. (Id. at 228-31). In her responses, Dr. Herringshaw stated that the school environment had been supportive for Bonham-Conn and that his symptoms had worsened since he left school because he has been more isolated. She also stated that Bonham-Conn had a GAF score of 50, which meant that he had serious symptoms or impairments in social, occupational, or school functioning. Nevertheless, Dr. Herringshaw believed Bonham-Conn would be able to work on a part-time basis. She stated that his low frustration tolerance and generally depressed mood would affect his ability to perform work. In addition, he would need close supervision in any job he worked, although he would be able to follow work rules, be reliable, and regularly appear for work. She also believed he would not be distracted by coworkers once he had learned his tasks well.

On November 15, 2007, the ALJ issued a decision finding that Bonham-Conn was not disabled. (Id. at 18-31). The ALJ concluded that Bonham-Conn had the RFC to perform light work lifting ten pounds frequently and twenty pounds occasionally, and which involved occasional climbing. He was further limited to unskilled work that provided for routine production and stress, simple job assignments and occasional contact with supervision. In addition, the ALJ determined that, considering Bonham-Conn's RFC, age, education, and work experience, there were a significant number of jobs in the national economy that he could perform. The Appeals Council subsequently denied Bonham-Conn's request for review, making the ALJ's determination the final decision of the Commissioner. (Id. at 8). Bonham-Conn then filed suit in this Court challenging the ALJ's decision.

### III.	STANDARD OF REVIEW

A district court must conduct a *de novo* review of the parts of a Magistrate Judge's R&R to which a party objects.  28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."  Id.  The requirement of *de novo* review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure."  United States v. Shami, 754 F.2d 670, 672 (6th Cir.1985).  Accordingly, Congress enacted 28 U.S.C. § 636(b)(1) to "insure[ ] that the district judge would be the final arbiter" of a matter referred to a magistrate.  Flournoy v. Marshall, 842 F.2d 875, 878 (6th Cir.1987).

The Court must affirm the Commissioner's conclusions so long as the Commissioner applied the correct legal standards and made findings of fact that are supported by substantial evidence in the record.  Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is evidence that a reasonable mind might accept as adequate evidence in support a conclusion.  Id.  This means that administrative findings

> are not subject to reversal merely because substantial evidence exists in
> the record to support a different conclusion. The substantial evidence
> standard presupposes that there is a 'zone of choice' within which the
> [Commissioner] may proceed without interference from the courts. If the
> [administrative] decision is supported by substantial evidence, a reviewing
> court must affirm.

Felinsky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted).


### IV.	ANALYSIS

8

**A.     The Proper Legal Standard**

The Magistrate Judge concluded that the proper standard to be applied in a child's disability insurance benefits case was the analysis set forth in 20 C.F.R. §§ 416.924 and 416.926a, and that the ALJ erred by using the analysis applicable to adult disability cases, as set forth in 20 C.F.R. § 404.1520.[1] (See doc. 16 at 4-7). Defendant objects that the R&R's conclusion is incorrect and that the ALJ did apply the proper standard.

Under the provisions of the Social Security Act ("SSA"), two of the forms of benefits that are available are Federal, Old-Age, and Survivors Disability Insurance (which is covered in Title II of the SSA) and Supplemental Security Income for the Aged, Blind, and Disabled (which is covered under Title XVI of the SSA). See 42 U.S.C. § 401 *et seq.* and § 1381 *et seq.* The regulations enacted and set forth in part 404 of title 20, Code of Federal Regulations, relate solely to Federal, Old-Age, and Survivor Disability Insurance under the Social Security Act, whereas the regulations enacted and set forth in part 416 of title 20, Code of Federal Regulations, relate solely to Supplemental Security Income for The Aged, Blind, and Disabled under the Social Security Act. 20 C.F.R. §§ 404.1 and 416.101. In this case, Bonham-Conn applied for child's disability insurance benefits under the Federal, Old-Age, and Survivor Disability Insurance program. (See AR at 18, 76, 187). Accordingly, the applicable regulations are those set forth in part 404 of title 20, Code of Federal Regulations.

---

[1] The R&R also states that the ALJ used the analysis set forth in 20 C.F.R. § 416.920. (Doc. 16 at 7). This appears to be incorrect because although the 5-step analysis contained in 20 C.F.R. §§ 404.1520 and 416.920 are virtually identical, the ALJ never indicated that he was relying on § 416.920.

"To qualify for receipt of child's disability insurance benefits based on the income of a parent wage earner, the claimant must 1) file an application for child's benefits, 2) be unmarried at the time of filing, and 3) be under age eighteen, be eighteen years or older and have a disability that began before age twenty-two years old, or be eighteen years or older and qualify for benefits as a full time student." Cornn v. Comm'r of Soc. Sec., 7 Fed. Appx. 369, 371 (6th Cir. 2001); 20 C.F.R. § 404.350. An applicant for child's insurance benefits based on a disability before age 22 will be considered to be disabled if they are unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether an applicant satisfies this definition of disability, the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520(a)(4) is used. 20 C.F.R. § 404.1520(a)(1)-(2).

Accordingly, the ALJ applied the correct standard when he applied the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a)(4) to Bonham-Conn's application for chid's disability insurance benefits based on a disability he suffered before the age of 22. Thus, the Court rejects the R&R's conclusion that the ALJ applied the incorrect standard. Therefore, the Court must consider Bonham-Conn's challenge to the ALJ's conclusion that he failed to establish his entitlement to child's disability insurance benefits.

**B.     Bonham-Conn's Entitlement to Benefits**

A five-step sequential evaluation process is used in determining whether an individual is entitled to child's insurance benefits based on a disability that occurred before the age of 22. <u>See</u> 20 C.F.R. §§ 404.1505(a) and 404.1520(a)(1)-(2). The five-step sequential evaluation process is set forth as follows:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (See paragraph (b) of this section.)
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (See paragraph (c) of this section.)
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (See paragraph (d) of this section.)
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (See paragraph (f) of this section and § 404.1560(b).)
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. (See paragraph (g) of this section and § 404.1560(c)).

20 C.F.R. § 404.1520(a)(4).

Bonham-Conn contends that he cannot perform unskilled work due to his inability to concentrate, focus, stay on task, deal with stress, and maintain attention; thus, the ALJ erred in concluding that he could perform unskilled work. (<u>See</u> doc. 10 at 21). The

ALJ did find that Bonham-Conn had, among other things, moderate limitations in his ability to maintain concentration, persistence, or pace. (AR at 28). A significant amount of evidence was presented to the ALJ indicating the difficulties that Bonham-Conn had with maintaining his attention and staying on task. As such, the ALJ's conclusion was well supported. The ALJ went on to find that Bonham-Conn could perform unskilled work that involved routine production and stress, simple job assignments, and occasional contact with supervision. (Id. at 29).

Based on a review of the record as a whole, this Court concludes that substantial evidence does not support the ALJ's conclusion that Bonham-Conn could perform such work despite his moderate limitations in concentration, persistence, or pace because the ALJ's questions to the VE did not fully account for these limitations. As other courts have noted when addressing other claimants' limited abilities to maintain concentration, persistence, or pace, "there seems to be two components to having moderate problems in concentration. One deals with the frequency of how often one cannot concentrate. The other deals with the level of sophistication or intensity of the work that can be done with the concentration limitation." Benton v. Comm'r of Soc. Sec., 511 F.Supp.2d 842, 846 (E.D. Mich. 2007). In this case, the ALJ asked the VE whether there would be any jobs in which a person with Bonham-Conn's various exertional limitations could do unskilled work "that would provide for routine production and stress, simple job assignments, [and] occasional contact with supervision." The VE indicated that such jobs did exist in the national economy.

Although the ALJ's question addressed the limitations on the complexity of the work Bonham-Conn would be able to perform, it did not address the frequency with

12

which Bonham-Conn would be unable to concentrate. Hypothetical questions that, like the one in this case, do not address the frequency with which a claimant will be unable to concentrate are inadequate. See id. at 849; Brown v. Comm'r of Soc. Sec., No. 07-15418, 2009 WL 596360 at *8 (E.D. Mich. Mar. 9, 2009). Because the ALJ's hypothetical question to the VE did not fully reflect Bonham-Conn's concentration, persistence, and pace limitations, it does not constitute substantial evidence that there were jobs in the national economy for an individual with Bonham-Conn's limitations. See Benton, 511 F.Supp.2d at 849. Furthermore, although the VE indicated that there would not be jobs for an individual who he had the limitations indicated by the testimony of Bonham-Conn and his mother, their testimony conveyed limitations that were much more severe than the limitations that the ALJ found. As such, the VE never testified about jobs would be available for an individual with such limitations. Therefore, this case must be remanded for a determination of whether Bonham-Conn's ability to work would be affected by the moderate limitations in his abilities to maintain concentration, persistence, or pace.

**V.   CONCLUSION**

Accordingly, the Magistrate Judge's R&R is **REJECTED**. Defendant's Motion for Summary Judgment is **DENIED**, and Plaintiff's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's motion is granted only to the extent that it seeks remand to the Commissioner. As such, the Commissioner's decision denying Plaintiff's application for child's disability insurance benefits is

**REVERSED**, and the case is **REMANDED** to the Commissioner for further proceedings pursuant to "sentence four" of 42 U.S.C. § 405(g).

    **IT IS SO ORDERED.**


                                     s/Marianne O. Battani
                                     MARIANNE O. BATTANI
                                     UNITED STATES DISTRICT JUDGE


DATED: September 29, 2009


## CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

                                     s/Bernadette M. Thebolt
                                     Case Manager